IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

  v.                                                               **CIVIL NO. 1:19-CV-61**
                                                                                    **(KLEEH)**

**CHASITY D. WASSICK-MAYHEW,**

      **Defendant.**

**MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 15]**

Pending before the Court is Plaintiff's motion for summary judgment. For the reasons discussed herein, the Court **GRANTS** the motion.

      **I.**      <u>**INTRODUCTION AND PROCEDURAL HISTORY**</u>

This is a breach of contract action. There is no dispute that Defendant Chasity D. Wassick-Mayhew ("Defendant") entered into a contract with the federal government to participate in the Nurse Corps Scholarship Program ("NCSP") and received a scholarship. She then defaulted on her obligations. The parties dispute whether she should be granted a waiver.

The United States of America ("Plaintiff"), acting for and on behalf of the Department of Health and Human Services ("HHS"), filed a Complaint against Defendant on March 19, 2019. ECF No. 1. Count One of the Complaint seeks judgment against Defendant with respect to the debt on which she defaulted, and Count Two seeks

**MEMORANDUM OPINION AND ORDER GRANTING**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 15]**

judgment against her with respect to the amount that she was overpaid. Plaintiff filed a Motion for Summary Judgment on February 26, 2021. ECF No. 15. It is fully briefed and ripe for review.

## II.  UNDISPUTED FACTS

Through the NCSP, HHS provides scholarship funds to encourage individuals to serve as nurses in areas with nursing shortages. See 42 U.S.C. § 297n(d)(1). On June 4, 2008, Defendant signed a contract (the "Contract") with HHS to participate in the NCSP for the 2008-2009 academic year. See Motion, Exh. A. On September 23, 2008, HHS signed the Contract and approved Defendant's scholarship. Id. HHS also awarded Defendant continuing scholarships awards for the 2009-2010 academic year and the 2010-2011 academic year. See Motion, Exh. B. Defendant began nursing school in 2008 at Fairmont State University.

### The Contract

As a condition of the Contract, Defendant was to remain enrolled as a full-time student until she completed the nursing program. See Motion, Exh. A, at § B(2). Defendant was also required to promptly notify HHS in writing if her graduation date was delayed by a leave of absence, if she withdrew from courses, or if she withdrew from school. Id. § B(3). The Contract specifically provided that Defendant would be in breach if she

"voluntarily terminate[d] the nursing program before the completion of such training[.]" Id. § C(1)(c). It also stated that Defendant's obligation could be waived or suspended if "compliance with the obligation [wa]s impossible or compliance would involve extreme hardship and enforcement of such obligation would be unconscionable." Id. § D (2)(a).

### Medical Issues

Defendant took a medical leave of absence from nursing school for the fall 2010 semester. See Motion, Exh. C, at 14-15. On September 29, 2010, Defendant was examined by Dr. Gregory Peters at WVU Medicine, who indicated that Defendant "has just been feeling down lately. No real specific stressors." See Response, Exh. B. Dr. Peters prescribed Defendant medication for anxiety and depression. Id. He noted that Defendant's judgment and thought content were normal. Id.

On January 18, 2011, Defendant was examined by Dr. Sarah Altman, a psychology intern with University Health Associates. See Response, Exh. C. Defendant reported to Dr. Altman that she suffered from anxiety and panic attacks related to testing. Id. Defendant "denie[d] having any significant medical problems" and denied any issues with anxiety prior to nursing school. Id. Dr. Altman diagnosed her with a "Panic Disorder without Agoraphobia; Specific Phobia, situation type (testing)," with a note that

"Psychosocial stressors are moderate and include occupational difficulties." Id.

Dr. Altman also noted that Defendant had not had a panic attack since December 2010, and her anxiety had decreased to 3/10 average. Id. Defendant did "not report any depressive symptoms." Id. She completed a questionnaire, and her score indicated a "mild" level of psychological distress. Id. Defendant stated that her problems made it "somewhat" difficult for her to perform daily activities. Id. Dr. Altman recommended a "brief course of psychotherapy aimed specifically at panic attacks and test anxiety." Id. Ultimately, her prognosis was "fair to good." Id.

On August 2, 2012, Dr. Mohamed Saber Abdel-Rehim wrote the following regarding Defendant:

> I saw the patient mentioned above today and she is under my medical care. The patient has anxiety, panic attacks and performance anxiety which prevented her from attending her examination this year. As a result of that the patient will not be able to return to her nursing school program this year. The patient is being started on a new medication which may aide her to overcome her anxiety and panic attacks. The patient will also be seen by a psychologist who will help with her medical management. The patient will continue to follow with me periodically for her condition. I will be happy to answer any questions after receiving the patient's consent for discussing her medical condition.

See Response, Exh. D. On August 3, 2012, Defendant voluntarily

**MEMORANDUM OPINION AND ORDER GRANTING**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 15]**

withdrew from nursing school.  See Motion, Exh. C, at 14-15.

### Request for a Waiver

On March 20, 2013, Defendant requested a waiver of her NCSP obligation.  See Response, Exh. F.  Defendant wrote that compliance with her obligation was impossible because it was impossible for her to comply with Fairmont State's Leave of Absence ("LOA") Policy.  Id.  The LOA Policy provided that the nursing program must be completed within five years of admission, and the student must return within two years of the LOA date.  See Response, Exh. E.  Defendant's date of readmission was scheduled for fall 2012.  See Response, Exhs. E, F.  Defendant appears to have argued that she could not return for the fall 2012 semester because she had been unable to take an equivalence exam in May 2012 (Defendant had panic attacks leading up to and the morning of the exam).  See Response, Exh. F.  She attached medical documentation to her letter.  Id.

In her request for a waiver, Defendant also cited "extreme hardship such that enforcement of the obligation would be unconscionable."  Id.  She stated that her health care providers continued to adjust her medication to stabilize her condition, which continued to alter her thought process.  Id.  She stated that she had been unemployed for over one year and was relying on her husband's income.  Id.  She did not assert that her

circumstances, whether financial or medical, were permanent or that she would be unable to pursue gainful employment that would allow her to repay her scholarship debt in the future.

### Review and Denial of Waiver

Pursuant to the waiver review process in place at the time of Defendant's request, the Office of Legal and Compliance ("OLC") provided Defendant with instructions and a list of the medical and financial documentation necessary to process her request. See Reply, Exh. A, at ¶ 6. After OLC received the documentation, a NCSP analyst performed a preliminary review for relevancy and completeness. Id. ¶ 7. The documentation was then transmitted to a contracted consulting physician to review the health information and provide a recommendation regarding the applicant's ability to perform her obligations. Id.

Defendant signed the Authorization for Disclosure of Information forms, permitting the Federal Occupation Health Service ("FOH") physician to directly confer with her medical providers. Id. ¶ 8. OHC asked FOH to evaluate and opine as to (1) whether Defendant had a physical or mental disability; (2) the expected duration of the disability; and (3) whether the disability prevented her from performing any of her obligations under the Contract. Id. ¶ 9.

In a memorandum dated April 8, 2013, FOH provided its

evaluation and opinion based on Defendant's medical documentation. Id. ¶ 13. FOH found that the medical documentation supported Defendant's diagnosis of anxiety and panic attacks, but it did not recommend her for a waiver based on her medical condition:

> The participant's anxiety is not depression nor is it a disease process. Triggers to her anxiety arise from financial and child-care demands that conflict with her desire to complete the RN program. I do not consider this participant as suffering from a disabling physical or mental condition. I do not recommend her for a waiver of the [NCSP] obligation due to a physical or mental disability.

Id. FOH found no indication that Defendant's medical condition was permanently disabling or that it would prevent her from obtaining gainful employment that would allow her to satisfy her debt as required. Id. ¶ 15. Based on FOH analysis and consultation with NCSP staff, OLC rendered a decision. Id. ¶ 10.

In a letter dated June 6, 2013, HHS denied Defendant's request for a waiver. See Response, Exh. G. In the letter, HHS noted that a waiver may be granted where compliance with the NCSP obligation either (1) is impossible or (2) would involve an extreme hardship such that enforcement of the obligation would be unconscionable. Id. HHS explained that it considered (1) her "present financial resources and obligations"; (2) her "estimated future financial resources and obligation"; and (3) "[t]he extent

to which [she] had problems of a personal nature, such as a physical or mental disability, which so intrude on [her] present and future ability to perform as to raise a presumption that [she] would be unable to perform the obligation incurred." Id. The letter noted that Defendant had not been seen by providers at the Department of Behavioral Medicine since September 10, 2012. Id.

HHS informed Defendant that it did not find that her medical condition constituted an impossibility or extreme hardship:

> Although your financial and personal challenges may have exacerbated your anxiety, your medical documentation does not indicate that it is a depression or that you suffer from a disabling physical or mental condition. Therefore we could not conclude that you suffer from a medical condition that will permanently prevent you from working as a registered nurse (RN) or from satisfying your obligation through repayment of your NSP support. Accordingly, we were unable to approve your request for a waiver on the basis of the impossibility or extreme hardship circumstances.

Id.

In the same letter, HHS informed Defendant that she was in default and that the default debt would be due on August 3, 2015 (three years from the date of the breach). Id. HHS also informed Defendant that she had received overpayments during the 2010-2011 school year, and because she was not entitled to the overpayments, the overpayment amount was due in full immediately. Id.

**MEMORANDUM OPINION AND ORDER GRANTING**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 15]**

Because the debt was not due at that time, HHS informed Defendant that it had not yet considered whether her financial circumstances, as opposed to her medical condition, would qualify her for a suspension or waiver. Id. It advised her that a repayment agreement might be appropriate when her financial situation stabilized, and if she still believed that repayment was an extreme hardship 45 days prior to the debt's due date, she should contact OLC to request a suspension of obligation. Id. HHS also informed Defendant of the possibility of a forbearance agreement in the future. OLC never received any subsequent requests from Defendant. Reply, Exh. A, at ¶ 21.

**Default Debt (Count One)**

On June 26, 2013, HHS notified Defendant that she had defaulted on the Contract because she withdrew from nursing school. See Motion, Exh. E. HHS informed her that according to the Contract, the principal amount of $39,900.50, plus interest, was due in full by August 3, 2015 (three years after the default). Id.

On July 3, 2015, HHS reminded Defendant that her debt was due in full by August 3, 2015. See Motion, Exh. F. HHS advised her that if she failed to pay, her debt might be referred to another entity for enforced collection. Id. On November 28, 2015, HHS informed Defendant that it had referred her debt to a private

collection agency. See Motion, Exh. G.

By letters dated December 4, 2015, and July 7, 2017, HHS informed Defendant that her account was seriously delinquent and that HHS intended to refer her debt to other federal agencies for the purpose of administrative offset. See Motion, Exhs. H and I. On August 11, 2018, HHS informed Defendant that if she did not make a payment within thirty (30) days, HHS would refer the debt to the United States Department of Treasury for available offsets, and/or to the United States Department of Justice for enforced collection. See Motion, Exh. J.

### Overpayment Debt (Count Two)

After Defendant took a leave of absence and then withdrew from classes during the 2010-2011 academic year, HHS calculated that it had overpaid Defendant by $8,699.50 for the portions of that year during which she was not an active nursing student. See Motion, Exh. D. On November 20, 2015, HHS informed Defendant that it had suspended collection of the overpayment debt while she filed for bankruptcy. See Motion, Exh. K. HHS also informed Defendant that the debt was not discharged as part of her bankruptcy proceeding and that she was still responsible to pay the overpayment debt. Id.

On December 4, 2015, HHS again notified Defendant that her account was delinquent. See Motion, Exh. L. On August 10, 2018,

**MEMORANDUM OPINION AND ORDER GRANTING**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 15]**

Defendant was sent a final notice regarding the delinquent overpayment debt.  See Motion, Exh. M.  Defendant was notified that if she did not make a payment within sixty (60) days, HHS would refer the debt to the United States Department of Treasury for available offsets, and/or to the United States Department of Justice for Litigation.  Id.

### III.  STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no 'genuine issue for trial.'"  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

### IV.  DISCUSSION

A NCSP participant is liable to the federal government for

the amount of the award, plus interest, if he or she "voluntarily terminates the nursing program." 42 U.S.C. § 297n(g)(1)(A)(iii).[1] The amount is due within three (3) years of default. Id. § 297n(g)(3). HHS argues that Defendant should be liable for her default debt and overpayment debt, plus interest. Defendant argues that she qualifies for a waiver based on her medical condition.

A NCSP participant may receive a waiver or suspension of liability if "compliance by the participant (i) is impossible, or (ii) would involve extreme hardship to the participant and if enforcement of the service or payment obligation would be against equity and good conscience." 42 C.F.R. § 62.12(b)(2). Compliance is impossible if "the participant suffers from a physical or mental disability resulting in the permanent inability of the participant to perform the service or other activities which would be necessary to comply with the obligation." Id. § 62.12(c).

To determine whether an obligation imposes an undue hardship and is against equity and good conscience, the Secretary considers

>  (1) [t]he participant's present financial resources and obligations;
>
>  (2) [t]he participant's estimated future financial resources and obligations; and
>
>  (3) [t]he extent to which the participant has problems of a personal nature, such as physical or mental disability, terminal

---

[1] This statutory requirement is also explicitly stated in the Contract.

>      illness in the immediate family which so
> intrude on the participant's present and
> future ability to perform as to raise a
> presumption that the individual will be unable
> to perform the obligation incurred.

Id. § 62.12(d).

The Secretary retains discretion to grant or deny a waiver request. See id. § 62.12(b)(2) (stating that "[t]he Secretary may waive or suspend"). While case law analyzing NCSP waiver requests is sparse, the Court finds persuasive authority in cases analyzing waiver requests under the National Health Service Corps Scholarship Program ("NHSCP"). The NHSCP is a similar program that applies a nearly identical waiver standard. Compare 42 U.S.C. § 254o(d)(2) with 42 U.S.C. § 297n(g)(2).

In one case, the Eastern District of Louisiana, later affirmed by the Fifth Circuit, found that the "Secretary's denial of a request for waiver may only be reversed if it was arbitrary and capricious, an abuse of discretion, or not in accordance with law." United States v. Bloom, 925 F. Supp. 426, 432 (E.D. La. 1996), aff'd, 112 F.3d 200 (5th Cir. 1997). In another case, the Eastern District of Pennsylvania found that the Secretary's "decision is invalid only if it is 'arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law,' or if the action failed to comport with statutory, procedural, or constitutional requirements." United States v. Beane, Civ. Act.

No. 88-8488, 1990 WL 63603 (E.D. Pa. May 7, 1990) (citing 5 U.S.C. § 706(2)(A)-(D)).

A court reviewing an agency action shall "hold unlawful and set aside agency action, findings, and conclusions" if they are

> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> (B) contrary to constitutional right, power, privilege, or immunity;
>
> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
>
> (D) without observance of procedure required by law;
>
> (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
>
> (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.
>
> In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

5 U.S.C. § 706.

When HHS determined whether a waiver was appropriate in Defendant's case, HHS followed the appropriate statutory and regulatory guidance. HHS analyzed, under 42 C.F.R. § 62.12(b)(2),

**MEMORANDUM OPINION AND ORDER GRANTING**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 15]**

whether compliance by Defendant was either (i) impossible or (ii) would involve extreme hardship to her and if enforcement of the obligation would be against equity and good conscience. Pursuant to 42 C.F.R. § 62.12(c), HHS determined whether compliance was impossible by analyzing whether Defendant suffered from a physical or mental defect resulting in her inability to comply with her obligation.

After reviewing Defendant's medical information in accordance with federal law, HHS found and informed Defendant that her medical documentation did not indicate that she suffered from a disabling physical or mental condition.[2] Therefore, HHS could not conclude that she suffered from a medical condition that permanently prevented her from working as a registered nurse or satisfying her obligation.

HHS did not consider whether Defendant's financial circumstances would qualify her for a suspension or waiver because her debt was not due at the time. HHS informed her that if she still believed that her debt presented an extreme hardship 45 days

---

[2] Defendant takes issue with HHS's finding that her "medical documentation does not indicate that it is a depression," arguing that Dr. Peters diagnosed her with depression. The paperwork from Dr. Peters indicates that Defendant was prescribed medication for depression, but it does not include a diagnosis. Regardless, Defendant has cited nothing to indicate that Defendant's alleged depression is permanently disabling. The Bloom court upheld a waiver denial even when the participant was recognized to suffer from depression. See 925 F. Supp. at 432.

prior to the debt's due date, she could contact OLC to obtain more information regarding a request for suspension. Defendant never did. For all of these reasons, the Court finds that HHS properly analyzed the applicable law, and its findings were not arbitrary or capricious or otherwise unlawful as set forth in 5 U.S.C. § 706. There is no genuine issue of material fact at issue, and Plaintiff is entitled to summary judgment on Counts One and Two of the Complaint.

With respect to damages, the amount in dispute has not been challenged, and the Court has no reason to stray from the damages calculations submitted by Plaintiff in the Certificates of Indebtedness. See Motion, Exhs. B and D. Plaintiff is also entitled to post-judgment interest. The rate of such interest "shall be calculated from the date of entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of judgment." 28 U.S.C. § 1961(a) (internal footnote omitted).

## V.   CONCLUSION

For the reasons discussed above, Plaintiff is entitled to judgment as a matter of law on Counts One and Two of the Complaint. Plaintiff's motion for summary judgment is **GRANTED** [ECF No. 15]. Defendant is liable to Plaintiff in for the principle of the debt

**MEMORANDUM OPINION AND ORDER GRANTING**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 15]**

in Counts One and Two, plus costs and prejudgment interest on each debt to the date of judgment. Pursuant to 28 U.S.C. § 1961(a), interest on the judgment shall accrue at the legal rate until paid in full. This action is hereby **DISMISSED WITH PREJUDICE** and **STRICKEN** from the Court's active docket. Plaintiff is **ORDERED** to submit an updated calculation of damages on or before **April 21, 2022.**

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record. The Clerk is further directed to enter a separate order of judgment consistent with this Memorandum Opinion and Order.

DATED: March 21, 2022

/s/ Thomas S. Kleeh
THOMAS S. KLEEH
UNITED STATES DISTRICT JUDGE